USCA1 Opinion

 

 [NOT FOR PUBLICATION] United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 93-1360 THERESA AQUILINO AND DANIEL AQUILINO, Plaintiffs, Appellants, v. HARRAH'S ATLANTIC CITY, INC., Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, Senior U.S. District Judge] __________________________ ____________________ Before Boudin and Stahl, Circuit Judges, ______________ and Fuste,* District Judge. ______________ ____________________ George F. Parker, III with whom Kelly A. Kalandyk and Badger, ______________________ __________________ _______ Dolan, Parker & Cohen were on brief for appellants. _____________________ Jocelyn M. Sedney with whom Richard E. Brody and Morrison, __________________ __________________ _________ Mahoney & Miller were on brief for appellee. ________________ ____________________ September 14, 1993 ____________________ ____________________ *Of the District Court of Puerto Rico, sitting by designation. STAHL, Circuit Judge. In this "slip and fall" _____________ case, plaintiffs Theresa and Daniel Aquilino challenge the district court's decision granting defendant Harrah's Atlantic City, Inc.'s ("Harrah's") motion to dismiss for lack of personal jurisdiction. Finding no error in the decision below, we affirm. I. I. __ Background Background __________ Sometime in March 1988, plaintiffs were overnight guests at Harrah's Marina ("the Hotel"), a hotel and casino in Atlantic City, New Jersey, owned and operated by defendant. Every three or four months for the next year, defendant mailed various marketing brochures regarding the Hotel to plaintiffs' residence in Weston, Massachusetts. This promotional literature contained, inter alia, _____ ____ descriptions and photographs of Hotel accommodations, including photographs of guest rooms in "the Atrium," the section of the Hotel where the injuries in this lawsuit were allegedly sustained.1 The literature also emphasized certain attributes of the Hotel, including the convenience of its gambling facilities and the casino's late hours of operation. ____________________ 1. Defendant's Massachusetts-based solicitation efforts also included regular advertisements in the Boston Globe and ______ _____ mailings to plaintiffs' son, who, like his parents, had also previously stayed at the Hotel. -2- 2 In March 1989, after reviewing this literature, plaintiffs made reservations to stay for one night, March 16, 1989, at the Hotel, this time in the Atrium. Plaintiffs made the reservations over the telephone and charged the expenses to Daniel Aquilino's credit card, a card issued through the Bank of New England in Boston, Massachusetts. At around 7:30 p.m. on March 16, 1989, plaintiffs arrived at the Hotel. After having dinner, Daniel Aquilino went to their room for the evening, while Theresa Aquilino visited the casino. Several hours and one drink later, Theresa also retired to the room for the evening. As she was dosing off, she began to feel uncomfortable and decided to retrieve an extra pillow from the closet. On her way back to the bed, she tripped on telephone and/or electrical cords on the floor between the bed and nightstand, sustaining injuries which required medical attention. On March 3, 1992, plaintiffs filed this diversity action in district court, alleging claims for negligence, breach of contract, and loss of consortium.2 On June 18, 1992, defendant filed a motion to dismiss based upon lack of personal jurisdiction, which motion the district court ____________________ 2. Suit was originally brought against Harrah's and its parent company, Promus Companies, Inc. After learning that Promus was not a proper party to the suit, plaintiffs filed an amended complaint on May 1, 1992, dropping Promus. -3- 3 granted on February 22, 1993. After an unsuccessful motion to reconsider, plaintiffs filed this appeal. II. II. ___ Discussion Discussion __________ In their appeal, plaintiffs advance the following arguments: (1) that both Massachusetts long-arm statutes, Mass. Gen. L. ch. 223 38 and Mass. Gen. L. ch. 223A 3(a), confer personal jurisdiction over defendant; and (2) that the district court abused its discretion in dismissing plaintiffs' complaint without allowing discovery.3 Unfortunately for plaintiffs, we have recently rejected these very arguments in a case closely on point. See Crocker v. ___ _______ Hilton Int'l Barbados Ltd., 976 F.2d 797, 798-801 (1st Cir. ___________________________ 1992) (citing Fournier v. Best W. Treasure Island Resort, 962 ________ ______________________________ F.2d 126, 126-27 (1st Cir. 1992); Marino v. Hyatt Corp., 793 ______ ___________ F.2d 427, 428-31 (1st Cir. 1986)).4 As that case is on all fours with this one, it is controlling.5 Accordingly, for ____________________ 3. Plaintiffs also contend that the exercise of personal jurisdiction would not offend the Fourteenth Amendment's Due Process clause. Because we find infra, however, that the _____ state long-arm statutes fail to confer jurisdiction, we need not reach the merits of their constitutional argument. 4. Much of plaintiffs' brief is devoted to arguing that the First Circuit's interpretation of the Massachusetts long-arm statutes is patently mistaken. This panel is, however, bound by prior panel decisions closely on point. E.g., Fournier, ____ ________ 962 F.2d at 127. 5. Plaintiffs attempt to distinguish Crocker, both on the _______ issue of Massachusetts long-arm jurisdiction and the issue of discovery, by pointing out various factual differences which -4- 4 the reasons therein stated, we reject plaintiffs' appeal as meritless. Affirmed. Costs to appellee. Affirmed. Costs to appellee. _________ __________________ ____________________ they contend have legal significance. We have considered each of these contentions and find them to be without merit. -5- 5